**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 8, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff- Appellant,

v.

RONALD RICHARD CREIGHTON,

Defendant - Appellee.

No. 07-1351

(D. Colorado)

(D.C. No. 06-CR-372-WDM-1)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McKAY**, and **BALDOCK**, Circuit Judges.

## I.    Introduction

Defendant-Appellee Ronald Richard Creighton was charged in a multi-count indictment with crimes related to a fraud scheme involving mail and identity theft. Creighton filed a motion seeking to suppress evidence obtained from four unrelated searches. The only search relevant to this appeal took place after Creighton was arrested at the home of a co-defendant, Melissa Bowery, who initially accused him of holding her in the home against her will. The district

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

court granted Creighton's motion as to the evidence obtained as a result of that arrest. Applying the principles of *Terry v. Ohio*, 392 U.S. 1 (1968), the court concluded the Government failed to show Creighton's continued detention was justified by probable cause. The Government brought this appeal, challenging the district court's probable cause determination. Exercising jurisdiction pursuant to 18 U.S.C. § 3731, we **reverse** the district court's grant of Creighton's suppression motion.

## II. Background

On July 11, 2006, Creighton was arrested at a home located in Aurora, Colorado. We agree with the district court that the record contains very little explanation of what occurred prior to and during the encounter between Creighton and the police at the Aurora residence.[1] A portion of that relevant evidence is the testimony of Kenneth Giger, a detective with the Aurora Police Department who testified at the suppression hearing. Detective Giger received information on July 11, 2006, that a woman named Melissa Bowery had advised police she and her mother, Linda Bowery, were being held against their will in their home located on

---

[1]The Government argues Creighton's Supplemental Appendix should be stricken because it is comprised of documents that were never admitted into evidence during the suppression hearing. Although these documents provide a more comprehensive picture of the arrest and detention of Creighton, we agree with the Government that they are not properly before this court and, thus, **grant** the Government's motion to strike. *See United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000).

Granby Way in Aurora. Bowery also asserted that the suspect, later identified as defendant Creighton, had forced her to make and pass fraudulent checks to satisfy a drug debt owed by her husband. Bowery told police that Creighton had a firearm and kept it near him at all times. He had shown the gun to Bowery but never pointed it at her, although he had threatened to harm her husband.

Officers were dispatched to the Granby Way address and they succeeded in removing Bowery's mother from the home. Creighton was then ordered to exit the residence and he complied, after being warned that the officers would send in a trained police dog if he did not accede. Creighton was handcuffed and placed in a patrol car.

When Detective Giger arrived at the Granby Way address, he was met by Detective Mike Thomas and they discussed an interview Thomas had conducted with Bowery. During the interview, Bowery repeated her story that Creighton had been holding her against her will in the Granby Way home for several days. Bowery indicated she escaped by telling Creighton she had to attend a custody hearing. Creighton told her to return within three hours or he would harm her mother. Bowery left the house and notified the Denver Police Department of the situation.

Giger and Thomas then took Creighton out of the patrol car and Mirandized him. Creighton waived his *Miranda* rights and agreed to be interviewed. Creighton told Giger he had been invited to stay in the home by Bowery and,

while there, had made false identification cards and checks for Bowery and a false identification card for himself. Creighton claimed that Bowery had voluntarily passed five or six of the checks. Creighton also told Giger he owned a Toshiba laptop computer but he made the checks using a removable disk and a Dell laptop computer owned by a man named Duane whom he had not seen in several weeks.

Creighton was taken into the Granby Way residence and asked to identify his property. Among that property was a checkbook with checks bearing the name of Carl Tanner together with an identification card for Carl Tanner. Creighton's photograph was on the Tanner identification card. Creighton signed a consent form related to his property located inside the residence, including two backpacks, five suitcases, a messenger bag, a keyboard box, two plastic trays, and a plastic bag. Creighton later signed a second consent form authorizing the search of his laptop and computer media.

Creighton was transported to the Aurora City Jail. Giger then interviewed Bowery who repeated her assertion that Creighton had provided her with a false identification card and checks. She also told Giger that Creighton had cashed several fraudulent checks. Bowery reiterated her allegation that Creighton held her against her will as collateral on a drug debt owed by her husband and she stated she cashed the checks to protect her husband. Giger, however, testified that Linda Bowery told the officers she had not been threatened by Creighton or held against her will. He admitted during redirect examination that Bowery's

story and her allegations of false imprisonment and extortion were "quickly falling apart" even before Creighton was transported to jail.

Creighton was charged in a multi-count indictment with numerous federal offenses. Three of the charges arose from the Granby Way incident on July 11: possession of stolen mail, in violation of 18 U.S.C. § 1708; possession of implements to make counterfeit documents, in violation of 18 U.S.C. § 1028(a)(5); and unlawful possession of the identification of another person, in violation of 18 U.S.C. § 1028A. Bowery was charged in the same indictment with possessing implements to make counterfeit documents and unlawfully possessing another person's identification documents. Creighton moved to suppress the evidence obtained following his arrest at the Granby Way residence.[2] The district court held an evidentiary hearing at which Detective Giger testified. The court granted the motion as to the July 11 search and the Government filed this interlocutory appeal pursuant to 18 U.S.C. § 3731.

III. Discussion

When reviewing the grant of a motion to suppress, this court examines the evidence in the light most favorable to the defendant and accepts the district court's factual findings unless they are clearly erroneous. *United States v.*

_____

[2]In his motion Creighton also sought to suppress evidence obtain during three additional searches. The district court's ruling on those searches is not relevant to this appeal.

*Nielson*, 415 F.3d 1195, 1198 (10th Cir. 2005). The determination of whether a Fourth Amendment violation has occurred, however, is reviewed de novo. *United States v. Oliver*, 363 F.3d 1061, 1065 (10th Cir. 2004).

In his motion to dismiss, Creighton argued that his detention and the search of his property were unlawful because the officers knew or should have known that Bowery's false imprisonment story was untrue. He stated in his brief to the district court: "Certainly, if the police wished to inquire of Mr. Creighton concerned [sic] non-related crimes, they could have done so, but not by detaining him for a crime they knew had not occurred." After the suppression hearing, both Creighton and the Government filed post-hearing briefs. In his brief, Creighton argued his detention was not supported by probable cause, reasonable suspicion, or exigent circumstances. In its post-hearing brief, the Government relied on *Terry v. Ohio* for its argument that Creighton voluntary exited the Aurora residence and was properly detained while police investigated Bowery's allegations.

The district court granted Creighton's motion, concluding the "initial detention *Terry* stop" was proper but that Creighton's arrest and continued detention were not supported by probable cause and, thus, were in violation of the Fourth Amendment. *Terry*, 392 U.S. at 18 ("[A] search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity

and scope."). The Government appealed, challenging the district court's probable cause determination.

Although the use of the *Terry* paradigm is debatable, Creighton has not challenged the district court's conclusion that his removal from the residence and initial detention were appropriate.[3] Instead, like the Government, Creighton confines his arguments to the issue of whether the officers had probable cause to arrest and detain him once the initial *Terry* investigatory detention ended. *See United States v. Torres-Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998) ("[A]rrests, the most intrusive of Fourth Amendment seizures[, are] reasonable only if supported by probable cause." (quotation omitted)); *United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996) (recognizing that a police-citizen encounter that begins as a *Terry* investigatory detention supported by reasonable articulable suspicion may escalate into a "full-blown arrest").

---

[3] In light of Giger's testimony that officers threatened to send a police dog into the Aurora residence if Creighton did not exit, it would appear that Creighton's seizure should be analyzed under *Payton v. New York*, 445 U.S. 573 (1980). *See United States v. Reeves*, No. 07-8028, ---- F.3d ---- (10th Cir. May 7, 2008). Because the issue was not presented to the district court, however, there are no factual findings relevant to the question of whether Bowery voluntarily gave the officers consent to enter her residence. *See, e.g., Georgia v. Randolph*, 547 U.S. 103, 106 (2006) ("The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained."); *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *United States v. Matlock*, 415 U.S. 164, 169-72 (1974).

The question of whether officers had probable cause to arrest an individual is a legal issue reviewed de novo. *United States v. Zamudio-Carrillo*, 499 F.3d 1206, 1209 (10th Cir. 2007). "Probable cause to arrest exists when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id*. (quotation omitted). It is based on the collective knowledge of all officers involved in the investigation and is measured against an objective standard of reasonableness. *Id*.

The crux of Creighton's argument is that Bowery's statements were not reasonably trustworthy and, thus, they did not provide probable cause to support Creighton's arrest or continued detention. The Government argues the officers reasonably relied on Bowery's statements because they were objectively reliable and because some of the statements were corroborated by Creighton himself. We believe the Government has the better argument.

Giger's uncontroverted testimony indicates that Bowery initially told police she and her mother were being held against their will in her home. She also claimed Creighton had forced her to pass fraudulent checks— an admission of criminal conduct on her part. "Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause . . . ." *United States v. Harris*, 403 U.S. 573,

583 (1971). Nothing in the appellate record indicates the officers had any basis upon which to disbelieve either the false imprisonment or criminal fraud elements of Bowery's story at the time the officers surrounded the Granby Way residence. *See Eason v. City of Boulder*, 776 F.2d 1441, 1449 (10th Cir. 1985) (noting that "the skepticism and careful scrutiny usually found in cases involving informants" is "relaxed if the informant is an identified victim"); *see also* 2 Wayne R. LaFave, Search & Seizure § 3.4(a) (4th ed. 2004) (stating the prevailing view that information given to police by a individual purporting to be victim of a crime "carries with it indicia of reliability" (quotation omitted)). Under the circumstances, Bowery's statements gave police probable cause to believe Creighton had committed the crime of false imprisonment, criminal fraud, or both.

After Linda Bowery exited the house, however, she told the officers she had not been threatened by Creighton. "If the police learn information that destroys their probable cause to arrest a defendant, the arrest may become illegal." *United States v. Edwards*, 242 F.3d 928, 934 (10th Cir. 2001). While Linda Bowery's statement may have affected probable cause relating to the false imprisonment claims, it did nothing to dissipate probable cause that Creighton was involved in criminal fraud activities. On this record, we conclude Bowery's statements, which included statements against her own penal interest, gave the officers probable cause to believe Creighton had committed a criminal fraud

offense at the time he was handcuffed and placed in the police car. His arrest was valid and did not violate the Fourth Amendment. Further, during his subsequent interview with Giger, Creighton quickly admitted he had created false identification cards and checks for himself and Bowery. Thus, his continued detention was clearly supported by probable cause and based on his own admissions corroborating Bowery's statements relating to the criminal fraud activity.

After his arrest, Creighton waived his *Miranda* rights and gave written consent to the search of his property. He has never asserted that his statements or the consent were coerced or involuntarily. Thus, because the search was not preceded by a Fourth Amendment violation, there is no basis upon which the evidence obtained after his valid arrest should be suppressed. *See United States v. Davis*, 197 F.3d 1048, 1052 (10th Cir. 1999) ("[Defendant's] arrest was supported by probable cause and therefore could not 'taint' his consent to the search of his bedroom.").

## IV.    Conclusion

Based on our review of the record, we conclude the district court erred when it determined the officers did not have probable cause to arrest Creighton. Accordingly, we **reverse** the district court's grant of Creighton's motion to

suppress the evidence obtained as a result of his arrest on July 11, 2006, and **remand** to the district court for further proceedings not inconsistent with this opinion.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge