UNITED STATES of America,
Plaintiff–Appellee,

v.

Luis Solano GONZALES and Bertha
Gomez, Defendants–Appellants.

Nos. 89–2097, 89–2098.

United States Court of Appeals,
Tenth Circuit.

March 1, 1990.

Robert Ramos (Gary Hill, on the brief), Hill & Ramos, El Paso, Tex., for defendants-appellants.

David N. Williams, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before ANDERSON, McWILLIAMS and BRORBY, Circuit Judges.

Before STEPHEN H. ANDERSON, Circuit Judge.

Appellants Luis Solano Gonzales and Bertha Gomez both pled guilty to possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and the district court entered a judgment convicting them of that crime.

As part of the guilty pleas, each reserved the right to challenge the district court's denial of their motion to suppress evidence obtained as the result of an investigatory vehicle stop. The only issue on appeal is the validity of that initial investigatory stop. Because the officers who made the stop reasonably relied on a bulletin issued by another peace officer based on information which gave him a reasonable suspicion that the vehicle's occupants were engaged in criminal activity, we affirm the district court's judgment.

## I. BACKGROUND

On December 2, 1988, a special agent with the Drug Enforcement Administration in Las Cruces, New Mexico, received a call from a confidential informant who volunteered information concerning "an individual who traffics narcotics in the southern New Mexico–El Paso areas." R.Vol. II at 5. The informant claimed to have had "previous contact with this individual, who ... flew into the Las Cruces area on a regular basis, [and] always rented these rental vehicles for a one-day period...." *Id.* The informant, who had witnessed this individual rent a gold Chevrolet Corsica earlier that day, gave the description of the car and a license plate number to the officer. The informant then stated that the individual who rented the car "was known [by the informant] to be a narcotics distributor ... and specifically by a friend [of the informant] who had bought narcotics from the person previously...." *Id.* The informant told the officer that "this person would be using this vehicle to transport and subsequently distribute narcotics." *Id.* at 13. The informant, when questioned by the officer, denied seeing any narcotics in the rental car described but reassured the officer that the car had been rented by this individual in the informant's presence.

The officer was not personally acquainted with the informant. Instead, the officer testified:

"I was not personally aware of the reliability of this informant. I discussed this source of information with the resident agent in charge ... who was familiar with the source and who told me that this source had been used by [another officer] previously."

*Id.* at 8. Upon further questioning, the DEA officer testified that the confidential source "was reliably in a job position," and was "very much" a "reliable citizen type informant." *Id.* at 13.

Based on the information received from the confidential informant, and on the advice that the informant had been used by the DEA previously and was reliable, the officer issued a BOLO ("be on the lookout for") bulletin for a "gold colored Chevrolet Corsica, Texas license 096–TPL, vehicle may be carrying narcotics, may be need [sic] to locate drugs, information from anonymous caller through DEA El Paso." *Id.* at 7–8. Early the next morning the BOLO was picked up by a Border Patrol agent who was stationed at the Las Cruces Border Patrol checkpoint. The Border Patrol agent observed a vehicle matching the description in the BOLO, bearing Texas license plates drive through the checkpoint. The agent and his partner followed the vehicle, which was traveling approximately 75 miles an hour, for four and one-half miles. They verified that the automobile was a gold Chevrolet Corsica bearing Texas license plates, and that the license plate number seemed to match the license plate number of the BOLO which both officers had seen earlier that morning. Neither officer could recall the exact license number listed on the BOLO, however. At that point they pulled the car over for an investigatory stop.

Upon approaching the vehicle on the driver's side, the Border Patrol agent detected the odor of burnt marijuana coming from the open car window. He identified himself as an immigration officer and made a routine citizenship inquiry. Gonzales, a passenger in the rear seat, at first claimed to be an American citizen but when the agent asked whether he had any proof of citizenship, he admitted that he was born in Mexico and that he was in the United States illegally. The agent then used his flashlight to illuminate the car's interior and saw Gomez, together with the driver of

the car, leaning close to each other, Gomez clutching the sweatpants she was wearing. The officers then proceeded to "pat down" the car's occupants, and discovered a small packet of cocaine concealed in Gomez's sweatpants. The car and its occupants were then arrested, and the car was returned to the checkpoint. A narcotics-trained dog alerted on the car and the luggage compartment; the compartment was opened and the dog alerted on the luggage inside. The luggage was searched and found to contain more than fifty pounds of marijuana.

## II. DISCUSSION

Gonzales and Gomez effectively concede two things: first, if the Border Patrol agents had proper grounds to make an investigatory stop of the vehicle then the subsequent events surrounding the investigatory stop and the ensuing search render any evidence seized from the automobile and its occupants admissible; second, if the DEA agent "had sufficient articulable facts supporting a reasonable suspicion that Appellants had committed an offense, then a reliance on the BOLO that he issued justified [the Border Patrol agents] in stopping the vehicle...." Appellants' Brief at 6; *see United States v. Hensley*, 469 U.S. 221, 233, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985) ("Assuming the police make a *Terry* stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop....").[1] Their major contention is that the information conveyed by the confidential informant is insufficient and lacks any indicia of reliability to justify an investigatory stop of the vehicle. We disagree.

1. Appellants further conceded at oral argument that the description of the automobile in the BOLO, although containing a license number different than the license of the car actually stopped, was sufficiently exact and that it matched the automobile in which the appellants were riding closely enough that the agents justifiably relied on the BOLO in making the stop.

■ In reviewing the district court's denial of appellants' motion to suppress the evidence seized during and after the investigatory stop, we apply a clearly erroneous standard to any findings of fact. *United States v. Cooper*, 733 F.2d 1360, 1364 (10th Cir.), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984). Absent any findings of fact, "this court must uphold the ruling if there is any reasonable view of the evidence to support it." *Id.* (citing *United States v. Montos*, 421 F.2d 215, 219 n. 1 (5th Cir.), *cert. denied*, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970)).

In a series of cases beginning with *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court recognized that police may, consistent with the Fourth Amendment, briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity. *See, e.g., United States v. Pollack*, 895 F.2d 686, 689–91 (10th Cir.1990); *United States v. Walraven*, 892 F.2d 972, 975 (10th Cir.1989) (citing *United States v. Espinosa*, 782 F.2d 888, 890 (10th Cir.1986)); *United States v. Neu*, 879 F.2d 805, 808 (10th Cir.1989). An investigatory stop, to be proper, "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The BOLO issued by the DEA agent may serve as just such "objective manifestation." In *United States v. Hensley*, the Court concluded that

"if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information."

Given the likely paucity of gold Chevrolet Corsicas carrying Texas license plates in the vicinity of Las Cruces that specific evening, we think this is a reasonable concession. Therefore, if the DEA agent's basis for issuing the BOLO is sufficient to warrant an investigatory stop, then the evidence is admissible.

469 U.S. at 232, 105 S.Ct. at 682 (citations omitted).

■ Gonzales and Gomez contend that the confidential informant lacked reliability. They give no reason, however, why the testimony of the DEA agent that the source was considered "a reliable citizen type informant" should be disbelieved. That testimony is based at the very minimum on the agent's knowledge that this informant had provided information to the DEA in the past, and that other DEA agents had "used" the source previously. Finally, the agent testified that the informant was "very much" a "reliable citizen type," who "was reliably in a job position." Credibility determinations are for the trial court judge. *United States v. Cooper*, 733 F.2d at 1364. In view of the limited scope of our review, we accept the district court's apparent conclusion that the informant could be considered sufficiently reliable to justify acting on the information provided.

■ Gonzales and Gomez also claim that the informant's information lacked sufficient facts upon which to base a reasonable suspicion. Specifically, they argue that the informant lacked any personal knowledge that the occupants of the car had committed a crime that day, because the informant admitted to seeing no drugs in the car at the time it was rented. Essentially, this argument would require the informant to be an eyewitness to a crime which had already occurred or which was in progress to justify an investigatory stop. That is clearly not the law. The informant's knowledge may be based on hearsay or even double hearsay. *See Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (A police officer acting on a tip from a known reliable source was justified in questioning the occupant of an automobile who the informant had said was carrying a weapon and narcotics; the informant apparently gave no indication as to how the information was obtained.); *United States v. Rutherford*, 824 F.2d 831, 833–34 (10th Cir.1987) (anonymous informant told police that his daughter had seen large quantities of marijuana in defendant's possession; based on that information, "at a

minimum, the police had 'reasonable suspicion....' "). Likewise, the informant's tip may involve a future act which is about to occur but has not yet happened. *See United States v. Swingler*, 758 F.2d 477, 483, 488–89 (10th Cir.1985) (police acting on informant's statement that her ex-husband "thought ... [drug] laboratory equipment was to be loaded into a U–Haul truck" for transport had sufficient reasonable suspicion to stop a U–Haul truck several days after the informant's tip).

In this case, the informant stated he had personal knowledge of the methods used by a particular individual in repeated drug transactions in the area. He also knew that the individual was once again renting a car for the express purpose of transporting and distributing drugs. The car was described in detail and the location and timing of the car's movements were accurately reported. The informant based all this on personal knowledge acquired over a period of time through past dealings involving the individual, the informant, and the informant's friend. Based on the foregoing, we will not disturb the district court's conclusion that the informant provided sufficient articulable facts to create a reasonable suspicion that the car's occupants were about to engage in illegal activity.

## III. CONCLUSION

The Border Patrol agents stopped the car in which Gonzales and Gomez were riding in reasonable reliance on the DEA agent's BOLO. The DEA agent, based on the facts communicated to him by a reliable confidential informant with adequate basis to claim personal knowledge concerning impending illegal conduct, had sufficient articulable facts on which to base a reasonable suspicion to warrant an investigatory stop. The stop was therefore proper and the resulting evidence was admissible. The judgment of the district court is AFFIRMED.