**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 28, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 06-3193

EDER ZAMUDIO-CARRILLO,

Defendant-Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 05-CR-10228-WEB)**

---

E. Jay Greeno, Wichita, Kansas, for Defendant-Appellant.

Eric F. Melgren, United States Attorney (Brent I. Anderson, Assistant United States Attorney, with him on the brief), District of Kansas, Wichita, Kansas, for Plaintiff-Appellee.

---

Before **MURPHY**, **McKAY**, and **McCONNELL**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

**I.     Introduction**

Appellant, Eder Zamudio-Carrillo was charged in a superseding indictment with drug and immigration crimes. Zamudio-Carrillo filed a motion to suppress

statements he made during his arrest and subsequent detention and evidence seized during a search of the vehicle he was driving at the time of his arrest. The district court denied the motion and Zamudio-Carrillo entered a conditional guilty plea to Counts 1 and 2 in the superseding indictment. He was sentenced to seventy-two months' imprisonment and three years' supervised release. Zamudio-Carrillo then brought this appeal challenging the denial of his suppression motion. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the denial of Zamudio-Carrillo's motion.

## II. Background

Trooper John Rule, an officer with the Kansas Highway Patrol, was patrolling a stretch of I-70 in northwest Kansas when he observed a white Ford Explorer with Arizona specialty license plates[1] traveling in an eastbound lane. Rule, who was traveling westbound, testified he suspected the Explorer had a false compartment because the rear of the vehicle was raised higher than normal. Rule turned his patrol car around in the median and attempted to catch up to the Explorer. As he pursued the Explorer, Rule passed a green Ford Escape, traveling approximately a quarter mile behind the Explorer and displaying the same Arizona specialty plate.

---

[1]Rule testified the license plate was decorated with pictures of handprints and bore the message, "It shouldn't hurt to be a child."

Rule, who was traveling parallel to the Explorer, looked across the lane into the Explorer's rear wheel well. Rule testified he was able to see a heavy layer of fresh undercoating and became certain the Explorer contained a false floor compartment. As he dropped back behind the Explorer and prepared to initiate a traffic stop, Rule observed the driver of the Explorer commit a traffic violation. Rule activated his emergency lights and pulled the Explorer over to the shoulder of the road. As Rule radioed in the license plate number for the Explorer, the green Ford Escape passed him and Rule noticed the Escape's Arizona specialty license plate was sequentially numbered.

Rule approached the passenger window of the Explorer and asked the driver, Archy Beltran-Lugo, for her driver's license. Rule then twice asked Beltran-Lugo whether she was traveling with another vehicle and she answered no both times. Rule testified he disbelieved Beltran-Lugo because he considered the odds that two unrelated vehicles with sequentially numbered, out-of-state specialty license plates would be traveling within half a mile of each other on a Kansas highway to be "astronomical." Rule then looked underneath the rear of the Explorer and confirmed the presence of a false compartment approximately four inches deep and running the width and length of the rear cargo area. Because Rule believed Beltran-Lugo was traveling in tandem with the driver of the Escape, he contacted dispatch and asked them to send an officer to locate the Escape. In response to the call, Trooper Steven Harvey pulled up to Rule's

location and Rule gave him a brief description of the Escape. Harvey then left in pursuit of the Escape.

After arresting Beltran-Lugo, Rule ran his drug dog around the Explorer. The dog entered the vehicle and alerted to the rear cargo area. Rule testified he did not make a thorough search of the area at that time because he believed it would be a significant undertaking to expose the hidden compartment and its contents.

While Rule detained Beltran-Lugo, Trooper Harvey pulled the green Escape over approximately eight miles down the highway. The Escape was driven by defendant Zamudio-Carrillo. After reviewing Zamudio-Carrillo's driver's license, Trooper Harvey asked him to step out of the vehicle, patted him down, and then handcuffed him.

Both the Explorer and the Escape were towed to highway patrol headquarters. Officers searched the Explorer and found twenty-three kilograms of cocaine hidden in the false compartment. During an inventory search of the Escape, officers discovered a hidden compartment containing nine kilograms of cocaine and fifteen kilograms of heroin.

Zamudio-Carrillo was charged with one count of possession with intent to distribute more than five kilograms of cocaine and one count of possession with intent to distribute more than one kilogram of heroin, in violation of 21 U.S.C. § 841(a)(1); one count of traveling in interstate commerce to promote an unlawful

activity, in violation of 18 U.S.C. § 1952(a)(3); and one count of unlawful entry into the United States by an alien, in violation of 8 U.S.C. § 1325(a)(1).  He moved to suppress statements he made during his detention and the evidence found during the search of the Ford Escape.  The district court denied the motion, ruling the seizure and arrest of Zamudio-Carrillo and the seizure and search of his vehicle were supported by probable cause and, thus, were reasonable under the Fourth Amendment.  The court stated, "Under the totality of the circumstances, the facts known to the officers in addition to the apparent presence of a false compartment in the Explorer would have suggested to a reasonable person that the drivers of these two vehicles were engaged in a joint enterprise involving drug smuggling."  Zamudio-Carrillo pleaded guilty to one count of possession with intent to distribute cocaine and one count of possession with intent to distribute heroin but preserved his right to appeal the denial of his suppression motion.

## III.  Discussion

When reviewing a district court's denial of a motion to suppress, we review the district court's factual findings for clear error and consider the evidence in the light most favorable to the Government.  *United States v. Grimmett*, 439 F.3d 1263, 1268 (10th Cir. 2006).  The Fourth Amendment does not prohibit warrantless arrests based on probable cause.  *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006).  Probable cause to arrest exists when the "facts and circumstances within the officers' knowledge, and of which they have

reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (quotation omitted). Probable cause is measured against an objective standard of reasonableness and may rest on the collective knowledge of all officers involved in an investigation rather than solely on the knowledge of the officer who made the arrest. *Id.*; *United States v. Merritt*, 695 F.2d 1263, 1268 (10th Cir. 1982). "The ultimate determination of whether probable cause to arrest existed is a legal issue that we review de novo." *Valenzuela*, 365 F.3d at 896.

Zamudio-Carrillo argues the initial stop of his vehicle was improper because Trooper Harvey did not observe him commit a traffic violation and did not have reasonable articulable suspicion that a traffic violation had occurred. He further argues that even if the initial stop was proper, Trooper Harvey lacked probable cause to detain and arrest him. After considering Zamudio-Carrillo's arguments in light of the record, we conclude the discovery of a false compartment in the Ford Explorer coupled with objective information indicating Beltran-Lugo was traveling in tandem with Zamudio-Carrillo gave Trooper Harvey probable cause to stop and seize Zamudio-Carrillo. *See United States v. Callarman*, 273 F.3d 1284, 1287 (10th Cir. 2001) ("[E]ither probable cause or reasonable suspicion is sufficient to justify a traffic stop . . . .").

This court employs a two-factor test to determine whether evidence of a hidden compartment is, by itself, sufficient to establish probable cause: (1) "the likelihood that there really is a hidden compartment" and (2) "the likelihood that a vehicle with a hidden compartment would, in the circumstances, be secreting contraband." *United States v. Jurado-Vallejo*, 380 F.3d 1235, 1238 (10th Cir. 2004). As to the first factor, at the time Zamudio-Carrillo was stopped by Trooper Harvey, observations made by Trooper Rule strongly supported his conclusion the Ford Explorer driven by Beltran-Lugo contained a hidden compartment. Trooper Rule testified he visually inspected the underside of the Explorer and observed that a crudely constructed metal panel had been installed around the gas line and a fresh layer of undercoating had been applied to the area. He testified he had previously seized six to ten Explorers and numerous other sport utility vehicles with false compartments beneath the floor, all constructed in basically the same way.

As to the second factor, Trooper Rule testified he could think of no legitimate reason to add a false compartment to a vehicle. Neither Zamudio-Carrillo nor Beltran-Lugo testified at the suppression hearing and neither offered any explanation for the presence of the compartment. Further, we observed in *Jurado-Vallejo* that "if the vehicle ha[s] a hidden compartment, it [is] highly likely to contain contraband." *Id*.

Zamudio-Carrillo's challenge to his arrest focuses primarily on the reasonableness of Trooper Rule's belief that he was traveling in tandem with Beltran-Lugo. Relying on this court's decision in *Valenzuela*, Zamudio-Carrillo asserts the discovery of the hidden compartment in the Explorer did not provide the troopers with probable cause to arrest him because they had no reasonable basis to believe he had any connection to the Explorer. In *Valenzuela*, Border Patrol agents in New Mexico stopped a vehicle and arrested the driver, believing she was traveling in tandem with a second vehicle in which officers had discovered a large quantity of marijuana. 365 F.3d at 895. The Government argued there was probable cause for the warrantless arrest because the Border Patrol agents reasonably believed the defendant was acting in concert with the driver of the vehicle transporting the marijuana. *Id*. at 897. The Government's argument was supported by evidence the two vehicles, *inter alia*, (1) both had Arizona license plates, (2) were traveling within fifty miles of the Mexican border, and (3) drove in close proximity to each other for twenty-five miles on two separate highways and through a town "where there were many opportunities to turn off the road or stop." *Id*. The district court granted the motion to suppress and this court affirmed, holding there was insufficient factual support for a reasonable belief the two vehicles were traveling in tandem. *Id*. at 901.

Although Zamudio-Carrillo asserts his situation is "similar" to the one presented in *Valenzuela*, the Government has highlighted several factors not

present in *Valenzuela* which support Trooper Rule's conclusion Zamudio-Carrillo was traveling in tandem with Beltran-Lugo. Specifically, Trooper Rule testified, and the district court found, that the Explorer and the Escape bore sequentially numbered, out-of-state specialty license plates. Rule testified this specialty plate was "a very rare tag for [troopers] to see on I-70 in western Kansas." Further, Beltran-Lugo told Rule she had recently acquired the Explorer. Rule reasonably inferred from the sequential numbering that the two tags had been purchased at the same time or one immediately after the other, indicating a connection between the two vehicles. Despite this apparent connection, however, Beltran-Lugo twice denied she was traveling with the driver of the Escape. Rule testified he was aware from prior experience that individuals smuggling drugs frequently travel in tandem although they usually deny it. All these facts, taken together, lead to the reasonable conclusion Zamudio-Carrillo's vehicle was connected to Beltran-Lugo's illegal activity. These circumstances make this case distinguishable from *Valenzuela*.

## IV. Conclusion

We conclude there is ample support for the conclusion Trooper Harvey had probable cause to arrest Zamudio-Carrillo based on an objectively reasonable suspicion he was traveling in tandem with a vehicle transporting drugs in a hidden compartment and, thus, involved in criminal activity. Accordingly, Zamudio-Carrillo's arrest, detention, and the subsequent inventory search of his vehicle did

not violate the Fourth Amendment. *See United States v. Lugo*, 978 F.2d 631, 636 (10th Cir. 1992). The district court's order denying Zamudio-Carrillo's motion to suppress is **affirmed**.