FILED
United States Court of Appeals
Tenth Circuit

December 23, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOSE CRUZ RODRIGUEZ-
RODRIGUEZ,

      Defendant-Appellant.

No. 07-2214

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 06-CR-00537-JB)**

Thomas L. Wright, El Paso, Texas, for the Defendant-Appellant.

Terri J. Abernathy, Assistant United States Attorney (Gregory J. Fouratt, United States Attorney and Gregory B. Wormuth, Assistant United States Attorney, with her on the brief), Office of the United States Attorney, Las Cruces, New Mexico, for the Plaintiff-Appellee.

Before **TACHA**, **LUCERO**, and **O'BRIEN**, Circuit Judges.

**LUCERO**, Circuit Judge.

This case requires us to apply United States v. Zamudio-Carrillo, 499 F.3d 1206, 1209 (10th Cir. 2007), and United States v. Valenzuela, 365 F.3d 892, 898

(10th Cir. 2004), to determine whether there was sufficient evidence of tandem driving such that probable cause to arrest the driver of one vehicle established probable cause to arrest the driver of a second vehicle.  The issue arose when defendant Jose Cruz Rodriguez-Rodriguez ("Rodriguez") was observed by a Santa Clara Police Officer as he drove his red Nissan just ahead of a brown pickup truck along a lightly traveled New Mexico highway.  Upon stopping the brown pickup truck, the officer discovered that it was carrying a substantial amount of marijuana.  He then radioed County Sheriff's Deputies and requested an interception of Rodriguez's car.  The call resulted in Rodriguez being taken into custody, whereupon he admitted to working in conjunction with the driver of the brown truck in the transport of marijuana.  Rodriguez was charged, a motion to suppress was denied, and he was convicted by a jury of one count of possession with intent to distribute 100 kilograms or more of marijuana under 21 U.S.C. § 841(b)(1)(B) and one count of conspiracy to commit the same under § 846.

On direct appeal, Rodriguez argues that his traffic stop violated the Fourth Amendment because it was not supported by reasonable suspicion.[1]  He also argues that his investigative detention amounted to an illegal arrest because it exceeded the scope of any arguably permissible stop, and officers lacked probable

---

[1] Although Rodriguez does not explicitly argue a violation of the Fourteenth Amendment, the Fourth Amendment applies against state law enforcement officials as incorporated through the Due Process Clause of the Fourteenth Amendment.  Mapp v. Ohio, 367 U.S. 643, 655 (1961).

cause to believe he had violated the law. We disagree with both of these contentions. On our review of the record, law enforcement had probable cause to support both a traffic stop and an arrest.

We hold that the officer who stopped the brown pickup had a sufficient basis to conclude that Rodriguez and the driver of the pickup were traveling together. Accordingly, when the officer discovered that the truck was carrying marijuana, probable cause to arrest Rodriguez arose. Thus, the initial stop was permissible and Rodriguez's constitutional rights were not violated even if his detention were an arrest. For these reasons, we affirm the denial of Rodriguez's motion to suppress and uphold the conviction.

**I**

We amplify the foregoing summary of the facts in order to establish the context of the defendant's claims. At a hearing on the defendant's motion to suppress, Santa Clara Police Officer Michael Marquez testified that, around 4:30 a.m., he saw a brown Dodge pickup truck driving two car lengths behind a red Nissan Sentra. As officers later learned, Rodriguez was driving the red Nissan, and his codefendant, Hiram Gallardo-De La Cruz ("Gallardo"), was driving the brown pickup. Both vehicles had California license plates and were traveling five miles per hour below the speed limit. Officer Marquez observed that the brown pickup truck was canted toward the rear, and chose to follow the two vehicles. All three vehicles were traveling in the right lane, but, according to Officer Marquez,

Rodriguez repeatedly veered into the left lane, "t[ook] a look" at Marquez's vehicle, then returned to the right lane. Marquez saw that the brown pickup truck lacked a light above its license plate, in violation of New Mexico state law. See N.M. Stat. Ann. § 66-3-805(c). At this point, he proceeded to stop the truck. When he did so, Officer Marquez testified, he saw Rodriguez's car "sit down," indicating that the driver was accelerating swiftly. Gallardo delayed in stopping, affording the Nissan adequate opportunity to continue out of sight. By radio, Marquez promptly requested a stop of the red vehicle for a "welfare check."

When Officer Marquez requested a driver's license and registration, Gallardo refused to identify himself or to provide a license. As they spoke, Marquez noticed an odor of fresh marijuana and saw a bundle inside the cab of the truck on the rear seat. Marquez obtained consent to search the bed of the truck and saw approximately ten more bundles matching the one in the cab. While Officer Marquez called the Grant County Sheriff's Department for backup, Gallardo escaped on foot.

Grant County Sheriff's Deputy Adam Arellano responded to Officer Marquez's call for assistance. Marquez told him that a red vehicle with tinted windows and a California license plate had been driving erratically and traveling with the brown pickup. Arellano issued what became the second alert to locate and stop the red vehicle, using a police code for suspected narcotics trafficking. Shortly thereafter, Sheriff's Deputy Anthony Bencomo responded to Arellano's

- 4 -

alert and notified Arellano that he stopped the red Nissan approximately six miles from where Marquez had stopped the brown pickup.

Deputy Arellano immediately drove to the scene of the Nissan's stop. Upon arrival, he obtained Rodriguez's permission to search the vehicle. Arellano handcuffed Rodriguez, notified him that he was not under arrest, and placed him in the rear of Bencomo's patrol vehicle while he searched Rodriguez's car. The search yielded no evidence of contraband, but there was evidence discovered linking Rodriguez to the driver of the brown truck. Rodriguez later admitted that he and Gallardo were working together to transport marijuana to California.

Before trial, Rodriguez moved to suppress all evidence obtained as a result of his stop, evidence which he alleged was unsupported by reasonable suspicion or, alternately, was beyond the scope of any such suspicion. The district court denied this motion and found the stop to be supported by reasonable suspicion and reasonable in scope. Rodriguez proceeded to trial and was convicted by a jury of both counts charged. He now appeals.

**II**

**A**

Rodriguez argues that the district court erred in denying his suppression motion because all evidence obtained against him resulted from a traffic stop that lacked reasonable suspicion at its outset, in violation of the Fourth Amendment. In reviewing a denial of a motion to suppress, we view the evidence in the light

most favorable to the government, accepting the district court's factual findings unless clearly erroneous. United States v. Katoa, 379 F.3d 1203, 1205 (10th Cir. 2004); United States v. Bustillos-Munoz, 235 F.3d 505, 511 (10th Cir. 2000). We review the ultimate Fourth Amendment determination de novo. Katoa, 379 F.3d at 1205; Bustillos-Munoz, 235 F.3d at 511.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is well established that an automobile stop constitutes a seizure for purposes of the Fourth Amendment, Delaware v. Prouse, 440 U.S. 648, 653 (1979); Whren v. United States, 517 U.S. 806, 809-10 (1996); United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998), and that a routine traffic stop is more analogous to an investigative detention than to a custodial arrest, Hunnicutt, 135 F.3d at 1348. Although probable cause is not necessary to support an investigative detention, it is sufficient. United States v. Callarman, 273 F.3d 1284, 1287 (10th Cir. 2001).

Rodriguez also challenges the scope of his traffic stop, claiming that it became an arrest when he was handcuffed and placed in Deputy Bencomo's vehicle.[2] As a matter of law, Rodriguez is correct that "[i]f a police-citizen

_____

[2] We disagree with the government that Rodriguez waived this argument by failing to raise it below as part of his motion to suppress. To the contrary, Rodriguez challenged the scope of the traffic stop in his suppression motion and thus preserved the illegal arrest issue.

encounter exceeds the limits of a <u>Terry</u> stop, the detention becomes an arrest that must be supported by probable cause." <u>United States v. Neff</u>, 300 F.3d 1217, 1220 (10th Cir. 2002); <u>United States v. Perdue</u>, 8 F.3d 1455, 1462 (10th Cir. 1993) (citing <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 881-82 (1975)). "An officer has probable cause to arrest if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." <u>United States v. Muñoz-Nava</u>, 524 F.3d 1137, 1144 (10th Cir. 2008) (quotation omitted). "Probable cause to arrest does not require facts sufficient to establish guilt, but does require more than mere suspicion." <u>Id.</u> (quotation omitted).

We need not determine whether Rodriguez's investigative detention amounted to an arrest if probable cause existed, because in such circumstances, an arrest would not violate the Fourth Amendment.[3] <u>See, e.g.</u>, <u>Latta v. Keryte</u>, 118 F.3d 693, 700 (10th Cir. 1997); <u>see also</u> <u>United States v. Watson</u>, 423 U.S. 411, 417 (1976) (holding that probable cause is sufficient for a public arrest to satisfy the Fourth Amendment). Thus, because the existence of probable cause would

---

[3] Although the government has not argued on appeal that law enforcement officials had probable cause to arrest Rodriguez, "[t]his court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." <u>United States v. Lott</u>, 310 F.3d 1231, 1242 n.7 (10th Cir. 2002) (quotation omitted).

resolve both issues in this appeal, we consider whether Rodriguez's stop and detention was supported by probable cause.[4]

**B**

When law enforcement officials rely on a bulletin or alert to conduct a stop or make an arrest, the relevant inquiry is whether the officer who issued the alert—rather than the officer who conducted the challenged action—had the requisite level of suspicion. United States v. Hensley, 469 U.S. 221, 233 (1985); United States v. Gonzales, 897 F.2d 504, 506 (10th Cir. 1990). In the ordinary case involving reliance on an alert issued by an officer with firsthand knowledge, the court analyzes whether the issuing officer had reasonable suspicion to support a stop or probable cause to support an arrest. See, e.g., Gonzales, 897 F.2d at 505-06. Here, however, as described above, the officer who observed the facts supporting probable cause did not himself issue the alert. Officer Marquez observed the vehicles driving together and discovered the marijuana in the brown pickup truck. Marquez then told Arellano that he had seen a red four-door vehicle with a California license plate and tinted windows driving erratically that Marquez concluded was traveling in tandem with the brown pickup. After learning this

---

[4] The district court denied Rodriguez's motion to suppress because it found that Rodriguez's detention was reasonably related in scope to the circumstances justifying the initial traffic stop. Yet, we need not resolve the case on that basis and may affirm the district court's ruling on alternative grounds. Lott, 310 F.3d at 1242 n.7 (quotation omitted).

information, Arellano issued the "attempt to locate" alert upon which Deputy Bencomo relied in stopping Rodriguez.

This minor factual variation need not alter our analysis. In Hensley, the Supreme Court reasoned that officers must be permitted to promptly rely on their colleagues from other law enforcement agencies without resorting to cross-examination to apprehend increasingly mobile suspects. 469 U.S. at 231. By the same reasoning, the fact that Arellano rather than Marquez actually sent the alert is immaterial. See id. (holding that the legality of an arrest relying on a flyer "turns on whether the officers who issued the flyer possessed probable cause to make the arrest" (emphasis added)); United States v. Chavez, 534 F.3d 1338, 1347-48 & n.13 (10th Cir. 2008) (officers may rely on others' instructions so long as there is "some communication between the officer or officers with probable cause and the officer who executes the stop," sufficient to "confirm[] that the officers are functioning as a team"). Thus, we need only inquire whether Officer Marquez had probable cause to believe that Rodriguez was committing a crime.[5]

Sufficient evidence that two vehicles are driving in tandem plus evidence that one vehicle contains contraband can provide probable cause sufficient to

---

[5] We note that this case does not involve a "horizontal" collective knowledge relationship in which the knowledge of several officers must be aggregated to create probable cause. Rather, it is a case of two "vertical" collective knowledge relationships in which the first officer's conclusion was conveyed twice to reach the officer who conducted the stop. See Chavez, 534 F.3d at 1345.

support arresting the driver of the other vehicle. Compare Zamudio-Carrillo, 499 F.3d at 1209 (holding that sufficient evidence of tandem driving and the discovery of a false compartment in one vehicle created probable cause to arrest the driver of the second), with Valenzuela, 365 F.3d at 898 (holding that insufficient evidence of tandem driving combined with discovery of drugs in one vehicle did not provide probable cause to arrest the driver of the second). The question, then, is whether the evidence of tandem driving in this case was strong enough that the discovery of marijuana in the truck created probable cause to conclude that Rodriguez, the driver of the car, had committed a crime.

In making this determination, we consider first Zamudio-Carrillo, a case in which two vehicles with consecutively numbered Arizona specialty license plates drove a quarter mile apart along a Kansas interstate highway. 499 F.3d at 1207. A Highway Patrol Trooper observed that one vehicle likely contained a false floor compartment. Id. at 1207-08. Combining that observation with the trooper's reasonable conclusion that the vehicles were driving in tandem, id. at 1210, probable cause existed to conclude that the driver of the second vehicle was involved in illegal activity, id. at 1209-10.

We consider also Valenzuela, a case in which two vehicles traveled some distance apart on a crowded highway. 365 F.3d at 898. Both vehicles had Arizona license plates, but they were not consecutively numbered as in Zamudio-Carrillo, and the vehicles never came closer than a quarter mile apart while traveling along

a congested interstate. Id. In that case we noted that it was "[h]ardly unusual" for two vehicles with Arizona license plates to travel on an interstate highway toward Arizona. Id. Therefore, we held that there was insufficient objective evidence of tandem driving to allow the discovery of marijuana in one vehicle to establish probable cause to arrest the driver of the other. Id. at 901.

Although no single fact in the present case is as compelling as the sequential specialty plates in Zamudio-Carrillo, there is nonetheless considerable objective evidence that the brown pickup and red Nissan were driving in tandem. Officer Marquez testified that the two vehicles traveled a mere two car lengths apart on a highway in very light traffic during the predawn hours of the morning, and as they did so, Rodriguez repeatedly swerved to better observe Officer Marquez's vehicle as it traveled behind the truck. Moreover, Rodriguez abruptly sped off when Marquez stopped the pickup, and the pickup seemingly waited for Rodriguez's vehicle to elude Marquez's range of vision before pulling over. The facts supporting probable cause in this case are unquestionably stronger than the facts this court deemed insufficient in Valenzuela in which two vehicles traveled some distance apart on a crowded highway. 365 F.3d at 989.

Although this is a highly factual inquiry and all facts present are necessary to our conclusion, Marquez had sufficient evidence to conclude that Rodriguez and Gallardo were traveling in tandem. Unlike in Zamudio-Carrillo, when Deputy Arellano issued the alert that led to Rodriguez being stopped, he and Officer

Marquez already knew that the pickup truck contained a large quantity of marijuana; thus, they unquestionably had probable cause to believe that Gallardo had committed a crime. Accordingly, we hold that the evidence of tandem driving in the present case created probable cause that Rodriguez was committing a crime as well.[6] This probable cause was sufficient to support his traffic stop and any subsequent arrest.

## III

**AFFIRMED**.

---

[6] Because we hold that Officer Marquez had probable cause to stop Rodriguez's car based on narcotics trafficking, upon which Deputies Arellano and Bencomo relied, we need not consider the district court's determination that Rodriguez's erratic driving independently created reasonable suspicion supporting a stop.