COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Malveaux and Athey
Argued by teleconference

<span style="writing-mode: vertical-rl">PUBLISHED</span>

AARON EMILE McARTHUR

OPINION BY
v.        Record No. 1793-19-2                    JUDGE CLIFFORD L. ATHEY, JR.
JULY 28, 2020

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Gregory L. Rupe, Judge[1]

Miriam Airington-Fisher (Airington, Stone & Rockecharlie, PLLC,
on briefs), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General
(Mark R. Herring, Attorney General, on brief), for appellee.


Aaron Emile McArthur ("McArthur") appeals his conviction in the Circuit Court of the

City of Richmond for possession of a firearm by a convicted felon in violation of Code

§ 18.2-308.2. McArthur alleges that the trial court erred by: (1) denying his motion to suppress

the firearm in violation of his Fourth Amendment right against unlawful searches, (2) admitting

into evidence the entirety of his criminal history, (3) denying his motion to strike the evidence,

and (4) denying his motion to set aside the verdict.

I. BACKGROUND

On May 12, 2018, Richmond Police Officer Michael Blaylock ("Officer Blaylock" or

"Blaylock") initiated a traffic stop on a vehicle McArthur was driving for a defective fog light.

After ascertaining McArthur's identity, Officer Blaylock asked McArthur if there were any

---

[1] Judge Beverly W. Snukals presided over the March 13, 2019 hearing denying
appellant's motion to suppress which is the subject of this appeal.

weapons in the vehicle. McArthur stated that the vehicle was owned by his girlfriend and, as far as he knew, there were no weapons in her vehicle. McArthur then provided Blaylock with an identification card, which was passed along to Officer Carrie Griffith ("Officer Griffith" or "Griffith").

Officer Griffith returned to the police cruiser with the identification card and obtained criminal and driving information on McArthur from the mobile computer in the police cruiser. The information included an alert through the Virginia Department of Corrections that McArthur was thought to have been a member of the Crips gang during a previous incarceration. While Griffith was obtaining this information, Blaylock asked McArthur to consent to a search of his girlfriend's vehicle due to what Blaylock described as McArthur's "sketchy" demeanor. McArthur declined to consent to a search of the vehicle because he did not own the vehicle. McArthur then called his girlfriend to see if she would consent to a search of her vehicle. During the entirety of the traffic stop, McArthur made no furtive movements around the cabin of the vehicle and was polite and cooperative with Blaylock.

When McArthur declined to consent to a search of his girlfriend's vehicle, Blaylock instructed McArthur to exit the vehicle so that he could conduct a "protective sweep." McArthur immediately complied with Blaylock's request and exited and stood at the rear of the vehicle. Upon exiting the vehicle, McArthur began to sweat profusely and nervously stated to his girlfriend on the phone that "they are locking me up." Blaylock then searched underneath the driver's seat where he found a 9mm handgun hidden from view. After discovering the firearm, Blaylock instructed Officer Griffith to place McArthur under arrest. Officer Griffith did not inform Blaylock of McArthur's alleged past gang affiliation until the search of the vehicle and arrest had been effectuated.

McArthur subsequently moved to suppress any evidence recovered during the search of the vehicle. McArthur argued that Blaylock lacked a reasonable articulable suspicion that he was armed and dangerous when he engaged in the protective sweep of the vehicle. The Commonwealth defended Blaylock's protective sweep by arguing, in part, that Blaylock had a reasonable articulable suspicion based on the imputed knowledge Officer Griffith obtained concerning McArthur's alleged prior gang affiliation and incarceration. The trial court denied the motion to suppress, stating, "[t]he factors that the Court relied on are the evasiveness of the defendant at the scene, the gang affiliation information from [the databases], the high crime area, the lack of cooperativeness, and all the other conduct the officer testified to and was reflected on the body cam."

At trial, McArthur moved to strike the Commonwealth's case at the conclusion of their case-in-chief and at the conclusion of all the evidence based, in part, upon the trial court's failure to suppress the admission into evidence of the firearm. McArthur was subsequently found guilty of possession of a firearm as a violent felon and moved to set aside the verdict as contrary to the law and the evidence. The trial court denied the motion to set aside the verdict before sentencing McArthur to five years' incarceration. This appeal followed.

II. ANALYSIS

A. MOTION TO SUPPRESS

On appeal, when considering a challenge to the denial of a motion to suppress, the Court will review the decision *de novo* "when the defendant claims that the evidence sought to be suppressed was seized in violation of the Fourth Amendment." Glenn v. Commonwealth, 275 Va. 123, 130 (2008). However, we are "bound by the [trial] court's findings of historical fact unless 'plainly wrong' or without evidence to support them" and "give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."

McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*). We also view the evidence in the light most favorable to the prevailing party, the Commonwealth, with all inferences fairly deducible from that evidence accorded to the Commonwealth. Hill v. Commonwealth, 297 Va. 804, 808 (2019).

### 1. REASONABLE ARTICULABLE SUSPICION

The Fourth Amendment to the United States Constitution protects individuals from unreasonable warrantless searches and seizures. In Terry v. Ohio, 392 U.S. 1 (1968), the United States Supreme Court permitted "a protective search for weapons in the absence of probable cause to arrest . . . when a [police officer] possesses an articulable suspicion that an individual is armed and dangerous." Michigan v. Long, 463 U.S. 1032, 1034 (1983). "Recognizing the inordinate risk confronting the officer as he approaches a person seated in an automobile, the Court has extended such protective searches beyond the person, including areas of the passenger compartment of an automobile in which a weapon may be placed or hidden." Id.

Whether reasonable suspicion exists is "based on an assessment of the totality of the circumstances," Harris v. Commonwealth, 276 Va. 689, 695 (2008), which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person," Branham v. Commonwealth, 283 Va. 273, 280 (2012) (citations omitted). Additionally, if it is reasonable for the officer to suspect that the stopped individual may be armed and presently dangerous to the officer, "a limited protective search" of the individual being detained is reasonable under the Fourth Amendment. Adams v. Williams, 407 U.S. 143, 146 (1972). The proper focus is "the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him." Terry, 392 U.S. at 23.

- 4 -

As a result, "'reasonable suspicion' is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less demanding than that for probable cause.'" Perry v. Commonwealth, 280 Va. 572, 581 (2010) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). We must therefore look to the totality of the circumstances of each case in determining the validity of a police officer's actions. Whitfield v. Commonwealth, 265 Va. 358, 361 (2003). In addition, whether the conduct of a police officer is reasonable "is judged from the perspective of a[n objectively] reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's [subjective] intent or motivation." Thompson v. Commonwealth, 54 Va. App. 1, 7 (2009) (quoting Scott v. Commonwealth, 20 Va. App. 725, 727 (1995)). Therefore a protective sweep may be justified where "the police officer possesses a reasonable belief based on 'specific and articulable facts which taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and may gain immediate control of weapons." Taylor v. Commonwealth, 10 Va. App. 260, 264 (1990).

Here, McArthur was initially stopped for a defective fog light, made no furtive movements inside the vehicle, and was cooperative and polite. When Blaylock asked for consent to search the vehicle, McArthur reasonably declined on the basis that he was not the owner of the vehicle. Although the Fourth Amendment does not require McArthur to provide a reasonable basis for declining to consent to a warrantless search of his girlfriend's vehicle, McArthur provided a reasonable justification for declining to consent to the search. Furthermore, McArthur contacted his girlfriend during the traffic stop to see if she would consent to the search. In addition, upon request, McArthur immediately exited the vehicle and stood in an area behind the vehicle while Blaylock completed the warrantless search. Even though this traffic stop did occur in a "high crime area," the Virginia Supreme Court has held that a "person's

Fourth Amendment rights are not lessened simply because he or she happens to live or travel in a 'high crime' area." McCain v. Commonwealth, 275 Va. 546, 553 (2008).

In Hill v. Commonwealth, 297 Va. 804, 815 (2019), a defendant was sitting alone in his car in a high crime, high drug area. Upon approaching the vehicle, the defendant ignored repeated requests by the officer to show his hands and instead began "digging down" in the rear floorboard area of the car. Id. The Virginia Supreme Court held in that instance that, because of the lack of cooperation when asked to show his hands, and the furtive movements of the defendant reaching around in the floor of the car, the police had a reasonable basis for believing that the defendant was reaching for a weapon. Id. The Court noted, however, that the police would not be justified in searching or seizing the defendant if he had simply remained still and refused to show his hands when the police officers commanded him to do so. Id. at 821. See United States v. Lowe, 791 F.3d 424, 428, 433-35 (3d Cir. 2015) (finding no reasonable suspicion to conduct a Terry stop and frisk when the defendant did not take his hands out of his pockets when asked to do so and appeared "frozen" or "shocked" in response and merely "looked both ways over his shoulders").

At the time of the search, Blaylock thought McArthur seemed "sketchy" and nervous, however, "[n]ervousness during the course of a traffic stop, standing alone, is insufficient to justify a frisk for weapons . . . ." McCain, 275 Va. at 554. Blaylock confirmed, at the suppression hearing, that McArthur was polite and cooperative throughout the traffic stop and made no furtive movements around the cabin of the vehicle. As the Supreme Court noted in Hill, a lack of furtive movements by a polite and cooperative driver would negate the requisite reasonable articulable suspicion required, in the instant case, to initiate a search of the driver or cabin of the vehicle. See Hill, 297 Va. at 821.

During the suppression hearing, Blaylock also attempted to justify the search of the vehicle based upon his belief that McArthur was being evasive when he declined to consent to search the vehicle. The exercise of one's Fourth Amendment right to decline a warrantless search can never rise to the level of reasonable articulable suspicion that a person is armed and dangerous. If the Court permitted declining consent to search as justification for a warrantless search, then the exception to the rule would subsume the rule and McArthur would be denied the ability to exercise his constitutional right to decline a warrantless search.

As the Virginia Supreme Court stated in Hill, "the ultimate touchstone of the Fourth Amendment is reasonableness." Hill, 297 Va. at 822 (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). In the case at hand, it was unreasonable for Blaylock to conduct a protective sweep of a vehicle that had been pulled over for a defective fog light when McArthur made no furtive movements around the cabin of the vehicle, was cooperative and polite during the traffic stop, and immediately exited the vehicle at the officer's request. Without any further articulable facts indicating that Officer Blaylock reasonably suspected that McArthur was armed and dangerous, it was unreasonable for the officer to conduct a protective sweep of the vehicle.

2. COLLECTIVE KNOWLEDGE DOCTRINE

The Commonwealth also contends that Officer Griffith's knowledge that McArthur may have been gang affiliated while previously incarcerated should be imputed to Blaylock, creating reasonable articulable suspicion through the collective knowledge doctrine. The Commonwealth argues that a protective sweep of the vehicle would then be justified in this case due to Blaylock's imputed knowledge that gang affiliated individuals may be armed and dangerous. The Commonwealth bases their argument on Commonwealth v. Smith, 281 Va. 582, 586 (2011), however their reliance is misplaced.

In Smith, the Virginia Supreme Court held that a pat down of the defendant's outer clothing and subsequent seizure of a weapon was justified based on information obtained by police databases alerting officers at the scene that the defendant might be armed and dangerous. Id. The key distinction from the instant case is that the officers who participated in the pat down in Smith received the alert that Smith may be armed and dangerous prior to patting down the defendant's outer clothing. Id.

The facts here are clearly distinguishable from Smith. While Officer Griffith did receive an alert that McArthur had been previously incarcerated and could have gang affiliation, Griffith did not relay the information about McArthur's gang involvement while incarcerated to Blaylock until after the search of the vehicle was complete.

In Edmond v. Commonwealth, 66 Va. App. 490 (2016), we subsequently discussed the origins of what is now known as the collective knowledge doctrine at issue in Smith. Relying on Whiteley v. Warden, 401 U.S. 560 (1971), and United States v. Hensley, 469 U.S. 221 (1985), we found that the collective knowledge doctrine is supported on "the premise that where an officer's action is directed by another officer, that action is proper as long as the directing officer has the requisite knowledge to justify the action under the appropriate legal standard." Edmond, 66 Va. App. at 502.

Edmond also views positively the ruling from the United States Court of Appeals for the Fourth Circuit in United States v. Massenburg, 654 F.3d 480 (4th Cir. 2011).[2] In Massenburg, two officers responded to an anonymous tip about shots having been fired in an area known to be a high crime area. Id. at 483. The officers stopped four men and requested their consent to a search. Id. Massenburg declined the officers' request and stated that he did not need to be

---

[2] We recognize that cases decided by the Fourth Circuit are persuasive and not binding upon this Court.

searched.  Id.  Massenburg was subsequently searched involuntarily, and a gun and small amount of marijuana were recovered.  Id.  The second officer on the scene testified that prior to the searching officer frisking Massenburg, he had observed what he believed to be a small bulge in Massenburg's jacket but failed to communicate this knowledge to the frisking officer before the search was initiated.  Id.

The primary issue in Massenburg was whether, under the collective knowledge doctrine, the non-frisking officer's uncommunicated observation of a bulge in Massenburg's jacket should be imputed to the frisking officer as the basis for the frisking officer's reasonable suspicion thus permitting him to conduct the search.  Id. at 491.  The Fourth Circuit rejected this expansive aggregation principle it referred to as "horizontal" aggregation, distinguishing it from the less expansive "vertical" aggregation.  Id. at 494.  The court described a "'vertical' collective knowledge relationship in which [one] officer's conclusion [i]s conveyed" to others who then effect the seizure before distinguishing that relationship from a "'horizontal' collective knowledge relationship in which the knowledge of several officers must be aggregated to create probable cause."  Id. at 493 (quoting United States v. Rodriguez-Rodriguez, 550 F.3d 1223, 1228 n.5 (10th Cir. 2008)).  Concluding that through Supreme Court precedent, the doctrine "holds that when an officer acts on an instruction from another officer, the act is justified if the instructing officer had sufficient information to justify taking such action herself; in this very limited sense, the instructing officer's knowledge is imputed to the acting officer."  Id. at 492.

While this Court previously adopted the collective knowledge doctrine in Edmond, we have not resolved the extent to which the aggregation principles discussed in Massenburg apply to cases arising in the Commonwealth of Virginia.  The Commonwealth would have us expand the Virginia Supreme Court's holding in Smith, and our holding in Edmond, to adopt the

"horizontal" aggregation principle. We decline to expand the aggregation principle to this extreme.

Here, no information or instructions were transmitted between Griffith and Blaylock prior to Blaylock initiating the search. Blaylock did not initiate the search based on instructions from Griffith after she had sufficient information to justify such action herself. We therefore decline to adopt the Commonwealth's position that Officer Griffith's uncommunicated knowledge provides an after-the-fact justification to Blaylock's illegal search when Blaylock was not acting in reliance on her instructions or information. If we were to adopt the Commonwealth's position, the legality of a warrantless search would depend solely on whether officers are able to gather information held by other officers, after-the-fact, to create reasonable suspicion or probable cause. See Massenburg, 654 F.3d at 493.

We find that "horizontal" aggregations of knowledge, which are only communicated between officers after a stop, search, or arrest, cannot be subsequently relied upon by an officer as evidence supporting a reasonable articulable suspicion justifying the police action. However, as we held in Edmond, "an officer is justified in acting upon an instruction from another officer if the instructing officer had sufficient information to take such action himself." Edmond, 66 Va. App. at 503. This "vertical" aggregation of knowledge was found to be proper by the Virginia Supreme Court in Smith, and our decision in Edmond, and does not violate the Fourth Amendment principles allowing an officer to rely on bulletins or information obtained from databases thereby permitting officers "to act promptly in reliance on information." Hensley, 469 U.S. at 231.

The exclusionary rule's "sole purpose . . . is to deter future Fourth Amendment violations." Massenburg, 654 F.3d at 494 (quoting Davis v. United States, 564 U.S. 229, 236-37 (2011)). The expansion of the collective knowledge doctrine, as advocated by the

- 10 -

Commonwealth in this case, to allow for "horizontal" aggregation of knowledge not only fails to deter future Fourth Amendment violations but may well encourage them. See id.

As a result, we decline to impute Officer Griffith's knowledge of McArthur's possible gang affiliations to Officer Blaylock as justification for a protective sweep of the vehicle and thus the trial court erred in failing to grant the motion to suppress. Since any evidence, including the firearm, gathered from this protective sweep is in violation of McArthur's Fourth Amendment rights, the evidence is fruit of the poisonous tree and should have been suppressed.

B. SUFFICIENCY OF THE EVIDENCE

Although we reverse McArthur's conviction as violative of the Fourth Amendment of the United States Constitution, we are compelled to address McArthur's assignments of error three and four regarding the sufficiency of the evidence to sustain his conviction for possessing a firearm after having previously been convicted of a felony in order to ensure that any retrial of this charge would not violate double jeopardy principles. In doing so, we consider all of the evidence at trial, including the firearm which we have determined should have been suppressed. See Code § 19.2-324.1 ("the reviewing court shall consider *all* evidence admitted at trial to determine whether there is sufficient evidence to sustain the conviction" (emphasis added)); Lockhart v. Nelson, 488 U.S. 33, 40-41 (1988) ("It is quite clear from our opinion in Burks [v. United States, 437 U.S. 1 (1978),] that a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause -- indeed, that was the *ratio decidendi* of Burks -- and the overwhelming majority of appellate courts considering the question have agreed." (internal citation omitted)).

It is well settled that "[w]hen a defendant challenges the sufficiency of the evidence, we view the evidence and all reasonable inferences in the light most favorable to the Commonwealth, the prevailing party in the trial court." Rowland v. Commonwealth, 281 Va.

- 11 -

396, 399 (2011). "The judgment of conviction will be reversed only when the ruling is plainly wrong or without evidence to support it." Cordon v. Commonwealth, 280 Va. 691, 694 (2010). "[I]t is just as obligatory upon the appellate court, to set aside . . . the judgment of a court, when it is, in its opinion, contrary to the law and evidence, and therefore plainly wrong, as it is to sustain it when the reverse is true." Preston v. Commonwealth, 281 Va. 52, 57 (2011) (quoting Hickson v. Commonwealth, 258 Va. 383, 387 (1999)).

Code § 18.2-308.2 provides, in pertinent part that "[i]t shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm . . . ."

At the close of the Commonwealth's case-in-chief, McArthur moved to strike the evidence as insufficient to prove, beyond a reasonable doubt, that McArthur knowingly and intelligently possessed the firearm found hidden under the driver's seat of his girlfriend's vehicle. The trial court denied his motion. Post-trial, McArthur also moved to set aside the conviction as contrary to the law and evidence on the same grounds. The trial court also overruled McArthur's motion to set aside his conviction.

In this case, the evidence established that a firearm was found concealed underneath the driver's seat of his girlfriend's car which he was driving immediately prior to the firearm being found. "A conviction for unlawful possession . . . may be based solely on evidence of constructive possession." Wright v. Commonwealth, 278 Va. 754, 759 (2009). Whether evidence is sufficient to prove constructive possession "is largely a factual" question and requires circumstantial proof "that the defendant was aware of the presence and character of the [firearm] and that the [firearm] was subject to his dominion and control." Smallwood v. Commonwealth, 278 Va. 625, 630 (2009).

- 12 -

Here, the facts establish that the firearm was found underneath the driver's seat, placed in a manner consistent with how someone in the driver's seat might store a firearm, and was easily accessible upon a search beneath McArthur's seat, providing sufficient evidence that the firearm was within McArthur's dominion and control. See id. at 631 (finding firearm within defendant's dominion and control when located on an open console beside defendant's leg).

McArthur alleges, however, that no evidence exists to show that he was aware of the presence and character of the firearm. We disagree. While McArthur's actions inside the vehicle did not rise to the level of reasonable articulable suspicion to justify a warrantless search of the vehicle, McArthur's statements and nervous behavior after following Officer Blaylock's instructions to step out of the vehicle provide sufficient circumstantial evidence to show that he was aware of the firearm under the driver's seat.

Once Blaylock asked McArthur to get out of the vehicle, McArthur began to sweat profusely and nervously stated that "they are locking me up" to his girlfriend on the phone. Taking these facts, and drawing inferences in favor of the Commonwealth, we cannot say that the trial court was plainly wrong, as a matter of law, in finding that McArthur constructively possessed the firearm. See Commonwealth v. Hudson, 265 Va. 505, 513 (2003) (clarifying that on appellate review, the issue is whether a reasonable jury, upon consideration of all of the evidence in the light most favorable to the Commonwealth and the reasonable inferences therefrom, could have found the accused guilty beyond a reasonable doubt). Therefore, we hold that the evidence in the record, viewed in a light most favorable to the Commonwealth, is sufficient to sustain McArthur's conviction.

Because our mandate is to decide cases on the best and narrowest grounds, see Commonwealth v. White, 293 Va. 411, 419 (2017) (recognizing that "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'" (quoting

<u>Commonwealth v. Swann</u>, 290 Va. 194, 196 (2015))), we decline to address McArthur's second assignment of error regarding the admission of his entire criminal history at trial as this issue does not impact double jeopardy protections, and may be renewed in a different context upon remand should the Commonwealth choose to proceed to trial.

### III. CONCLUSION

For the foregoing reasons, we reverse the ruling of the trial court and remand for proceedings in accordance with this opinion.

<u>Reversed and remanded.</u>