**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 23 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

PAULA PAKA KATOA, a.k.a. Paul
Katoa,

      Defendant-Appellant.

No. 03-4202

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 02-CR-524-DKW)**

---

Scott Keith Wilson, Assistant Federal Public Defender (Steven B. Killpack, Federal Public Defender, with him on the briefs), Salt Lake City, Utah, for Defendant-Appellant.

Diana Hagen, Assistant United States Attorney (Paul M. Warner, United States Attorney, with her on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **SEYMOUR**, **ANDERSON** and **EBEL**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Paula Paka Katoa entered a conditional guilty plea to one count of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). In his plea, he preserved the right to appeal the district court's denial of his motion to suppress evidence obtained in violation of the Fourth Amendment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

# I

The district court found the following facts, which are undisputed by the parties. On September 12, 2001, Detective Darrell Dain of the West Valley City, Utah, Police Department's narcotics enforcement unit drafted an affidavit in support of a search warrant for narcotics and associated paraphernalia at Mr. Katoa's residence. Detective Dain outlined in detail the facts justifying the issuance of a "no-knock" warrant. In the affidavit, Detective Dain specifically requested a search warrant authorizing unannounced day or night execution.[1]

---

[1]The affidavit stated, in relevant part:
WHEREFORE, your affiant prays that a Search Warrant be issued for the seizure of said items:

> *at any time day or night* because there is reason to believe it is necessary to seize the property prior to it being concealed, destroyed, damaged, or altered, or for other good reasons to wit: . . . .
> Your affiant believes that *the cover of darkness is necessary*

for police to arrive undetected at the residence and thereby, decrease the chance any evidence could be concealed, destroyed, damaged, or

(continued...)

Detective Dain reviewed the affidavit with a deputy District Attorney before taking it to Utah District Court Judge L.A. Dever. He presented the affidavit to Judge Dever along with a search warrant he had prepared from a template. The warrant itself authorized a search of Mr. Katoa's residence "[i]n the day time with un-announced authority." Rec., vol. I, doc. 24 at 33. Detective Dain swore under oath that the documents were true and correct to the best of his knowledge, and signed the affidavit. Judge Dever read and signed the affidavit and warrant.

That evening, after ten o'clock, an armed SWAT team executed the no-knock warrant by ramming the door of Mr. Katoa's residence. After the SWAT team was inside, Detective Dain reviewed the search warrant with Mr. Katoa and Mr. Katoa's girlfriend. While reviewing the warrant, the detective noticed he had not changed the search warrant template and it still read "day time service." *Id.*, doc. 28 at 3. He immediately called Judge Dever and notified him of the drafting error. The judge told Detective Dain he had clearly understood the warrant to be

---

[1](...continued)
altered.

It is further requested that the officer executing the requested warrant *not be required to give notice of the officer's authority or purpose* . . . .

Your affiant prays for *unannounced authority anytime day or night.*

Rec., vol. I, doc. 24 at 18-19 (emphases added).

for nighttime service, and directed the detective to write "nighttime service" on the warrant, initial it, and indicate he was doing so on the authority of the judge. *Id.* Detective Dain wrote "OR NIGHTTIME" above "daytime" on the face of the warrant, and included the notation "PER ORDER OF JUDGE DEVER BY TELEPHONE @ 2345 HOURS THIS PART CHANGED TO REFLECT AS THE AFFIDAVIT." *Id.*, doc. 24 at 33. The judge also told Detective Dain that when he returned with the warrant, the judge would sign the changes. The judge subsequently did so.

## II

When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review *de novo* the ultimate determination of reasonableness under the Fourth Amendment. *United States v. Marquez*, 337 F.3d 1203, 1207 (10th Cir. 2003).

Mr. Katoa contends the nighttime search of his home violated the Fourth Amendment because it was unreasonable for the police to execute at night a warrant containing an express daytime limitation. He acknowledges that the police received telephonic instructions from the issuing judge to alter the warrant's language so it authorized a nighttime search as indicated in the affidavit

-4-

supporting the warrant, but he argues this belated authorization was insufficient to overcome the daytime limitation contained on the face of the original warrant.

Although state officials conducted the search in this case, the warrant must comport with the Fourth Amendment's reasonableness requirement. *See United States v. Green*, 178 F.3d 1099, 1105 (10th Cir. 1999); *United States v. Le*, 173 F.3d 1258, 1264 (10th Cir. 1999); *United States v. Callwood*, 66 F.3d 1110, 1112 (10th Cir. 1995). In conducting the Fourth Amendment inquiry, we recognize that a nighttime search is particularly intrusive. *Callwood*, 66 F.3d at 1112-13.

The district court here made specific findings that "Judge Dever understood Detective Dain to be seeking a nighttime warrant, intended to issue a nighttime warrant, and mistakenly believed he had, in fact, granted such authority." Rec., vol. I, doc. 28 at 7. The court also found that when Detective Dain realized the drafting error, he immediately called Judge Dever, who instructed him to write "nighttime service" on the warrant, initial the change, indicate it was authorized by the judge, and return it for signing. *Id.* at 3.

Mr. Katoa does not argue these findings are clearly erroneous, nor do we have any reason to believe they are. Instead, Mr. Katoa asserts that the execution of a warrant at nighttime which contained an express daytime limitation, where the nighttime search was telephonically authorized during the course of the search and the detective's affidavit detailing the need for a nighttime search was not

-5-

attached or incorporated by reference to the warrant, resulted in a search which violated Mr. Katoa's Fourth Amendment rights.

We begin by noting that there is no constitutional requirement that an officer present a warrant prior to a search. As the Supreme Court recently reaffirmed in *Groh v. Ramirez*, 124 S. Ct. 1284 (2004), the Fourth Amendment does not necessarily require officers to serve a warrant at the outset of a search:

> neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search. . . . Quite obviously, in some circumstances . . . it will be impracticable or imprudent for the officers to show the warrant in advance.

*Id.* at 1292 n.5.[2] The Court gave examples of "a surreptitious search by means of a wiretap," and "the search of empty or abandoned premises" as situations in which it would be impracticable or imprudent to show a warrant in advance. *Id.* The rationales justifying unannounced searches in those examples apply equally to the execution of a no-knock warrant served at night with SWAT team assistance. Presenting the warrant prior to the search would obviate the goals underlying the need for the SWAT team and the unannounced provision in the

---

[2] Federal Rule of Criminal Procedure 41 is not implicated in this case because the search warrant here was issued by a state court judge to a state officer. *See United States v. Chavez*, 812 F.2d 1295, 1300 (10th Cir. 1987) ("The government bears no burden in this case of acting in accordance with Rule 41(c) as this investigation and search was conducted purely by state officials."). Rule 41, by its own terms, applies only to "federal law enforcement officers." FED. R. CRIM. P. 41(a)(2)(C), (b).

warrant: maintaining the element of surprise and preventing the destruction of evidence. *See Katz v. United States*, 389 U.S. 347, 355 n.16 (1967) (noting conventional warrants ordinarily serve to notify suspects of intended search, but "officers need not announce their purpose before conducting an otherwise authorized search if such an announcement would provoke the escape of the suspect or the destruction of critical evidence"); *Ker v. California*, 374 U.S. 23, 37-41 (1963) (holding defendant's furtive and elusive conduct and opportunity for quick destruction of narcotics evidence justified officers' failure to give notice before entering residence). It was therefore reasonable for the officers to enter the residence before showing Mr. Katoa the search warrant.

Mr. Katoa cited several cases to support his argument that the "nighttime" language in the affidavit cannot be read to cure the warrant's "daytime" limitation because the affidavit was neither attached to the warrant at the time of execution nor incorporated by reference. *See United States v. Dahlman*, 13 F.3d 1391, 1395 (10th Cir. 1993) (warrant application or affidavit can cure defective warrant only when affidavit and warrant are physically connected so they constitute one document and warrant expressly refers to affidavit and incorporates it by reference using suitable words of reference); *United States v. Williamson*, 1 F.3d 1134, 1136 (10th Cir. 1993) (same); *United States v. Leary*, 846 F.2d 592, 603 (10th Cir. 1988) (same) (quoting 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE §

4.6(a) (2d ed. 1987)).  At oral argument, the parties addressed *Groh*, in which the Supreme Court ruled, in part, that an unattached and unincorporated affidavit and application were insufficient to cure a warrant describing the items to be seized as "single dwelling residence . . . blue in color."  124 S. Ct. at 1289-90.  With regard to the particularity of the warrant, the Court held that

> unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search), there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit.

*Id.* at 1291. Because the posture of the case in *Groh* obliged the Court to credit the homeowner's account that the officer only told her he was looking for "an explosive device in a box," *id.* at 1288, the Court did not address the officer's alleged attempt to cure the deficient warrant by explaining orally the objects of the search.  The Court considered the officer's description "little better than no guidance at all."  *Id.* at 1293.  Because the warrant "did not describe the items to be seized *at all*," it was "so obviously deficient that [the Court] must regard the search as warrantless within the meaning of our case law."  *Id.* at 1290 (emphasis in original) (citations and internal quotation marks omitted).

The Court determined the deficiencies of such a warrant could not be salvaged despite the actual existence of probable cause, the sufficiently particular–but unattached and unincorporated–warrant application, or the search

taking place within the limitations intended by the judge and described by the officer. *Id.* The Court's reasoning was based in large measure on the particularity requirement contained in the text of the Fourth Amendment:

> The fact that the *application* adequately described the "things to be seized" does not save the *warrant* from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents. *See Massachusetts v. Sheppard*, 468 U.S. 981, 988 n. 5 (1984) ("[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional"); *see also United States v. Stefonek*, 179 F.3d 1030, 1033 (7th Cir. 1999) ("[t]he Fourth Amendment requires that the *warrant* particularly describe the things to be seized, not the papers presented to the judicial officer . . . asked to issue the warrant").

*Id.* at 1289-90 (emphases in original).

We note that while the Fourth Amendment requires search warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized," there is no similar requirement in the amendment that a warrant indicate the appropriate time of day for its execution. *See* U.S. CONST. amend. IV. Pursuant to caselaw, that requirement falls within the more general "reasonableness" standard of the Fourth Amendment. *See O'Rourke v. City of Norman*, 875 F.2d 1465, 1473 (10th Cir. 1989) (describing historical common law background of nighttime search prohibition). While it is true the warrant Detective Dain initially read to Mr. Katoa neither included a provision for nighttime execution nor incorporated the affidavit by reference and attachment, the district court specifically found Judge Dever made clear by telephone that he

-9-

intended to authorize nighttime execution and instructed Detective Dain to amend the warrant to so reflect. The judge's clarification via telephone of "nighttime service" removed all ambiguity from the face of the warrant, making it unnecessary to construe the language of the affidavit in order to interpret the warrant itself. We hold that the judge's telephonic clarification cured any problem and made the nighttime search reasonable. To the extent *Groh* can be read to require "written assurance," from the judge to cure a facial deficiency, *see Groh*, 124 S. Ct. at 1291, that requirement was satisfied here by the issuing judge authorizing a change over the telephone and signing that change upon the return of the warrant.

The judge's telephonic authorization likewise distinguishes this case from the cases Mr. Katoa cites in which officers unconstitutionally executed daytime-only warrants at night without such authorization from a judge. *See, e.g.*, *O'Rourke*, 875 F.2d at 1474 (nighttime search held unreasonable under Fourth Amendment because determining that "a warrant limited to daytime execution authorizes the nighttime search of a home is to completely eviscerate the issuing magistrate's determination of reasonableness"); *United States ex rel. Boyance v. Myers*, 398 F.2d 896, 899 (3d Cir. 1968) (same); *United States v. Merritt*, 293 F.2d 742, 746 (3d Cir. 1961) (same). In none of those cases did the officers call the issuing judges to cure the warrants' facial deficiencies. In the instant case,

Judge Dever was in a perfect position to instruct Detective Dain over the telephone that the officers had no authority to search at night if the judge had intended to authorize only daytime execution. Likewise, had Detective Dain simply proceeded with the search after realizing the drafting error rather than calling the judge for authorization, Mr. Katoa would prevail. We are confident that any future risk of officers intentionally misdrafting warrants and attempting to salvage them with heat-of-the-moment telephone calls to sleepy judges in the middle of the night will be ameliorated by the issuing judges' ability to refuse authorization of nighttime execution over the telephone.

On the facts before us, we conclude nighttime execution of the warrant was reasonable. Our holding is narrow: when the face of a warrant contains a drafting defect or omission regarding a subject not specifically named in the Constitution, the warrant is made valid if the issuing judge authorizes correction of the defect or omission via telephone during the search and subsequently confirms that authorization in writing. Thus, when an officer supplies an affidavit in support of a search warrant clearly indicating he seeks authorization for a nighttime search, the judge understands authorization for a nighttime search is being requested, the judge intends to authorize a nighttime search and believes he is doing so despite a drafting error omitting words indicating nighttime execution, the officer discovers the drafting error while executing the search at night and immediately receives

telephonic authorization to execute the warrant at night, and the judge signs the warrant upon return, nighttime execution of the warrant is reasonable. Because there is no dispute in this case about the existence of probable cause, the particularity requirement regarding the place to be searched, the specificity requirement regarding the items named in the warrant, the relationship between the contents of the affidavit and warrant, or the justification for nighttime execution, we need not and do not address those issues.

For the foregoing reasons, we AFFIRM. Appellee's motion to supplement the record on appeal is denied as moot.