******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PALMER, J., dissenting. I agree with and join Justice McDonald's convincing dissent. As both Justice McDonald and the Appellate Court explain; see *State* v. *Kendrick*, 132 Conn. App. 473, 484, 31 A.3d 1189 (2011); the circumstances known to the police when they entered the room in Blanca Valvo's third floor apartment at 239 Knickerbocker Avenue in the city of Stamford, where the defendant, Said Kendrick, was located, were insufficient to support a reasonable concern that entry into that room was necessary to protect their safety. In particular, and contrary to the reasoning of the majority, the information that the landlord of 239 Knickerbocker Avenue provided to the police, namely, that "an African-American man matching [Malik] Singer's general description had been 'keeping company with' the daughter of the tenant in the third floor unit," is not entitled to any weight because, in fact, the only information that the landlord provided was that the man in question was an African-American. Indeed, although the majority relies on the landlord's "description" of the man that he had seen with Valvo's daughter to support its conclusion that the warrantless search at issue was justified, the majority also appears to concede that that description was entirely devoid of *any* other identifying facts or information in noting "the vagueness of the landlord's description, which was merely that a black male was associated with the third floor unit." Without anything more—and despite the cell phone "ping," which provided a basis to believe only that Singer was somewhere in the vicinity of 239 Knickerbocker Avenue—the police had no more reason to think that Singer was in a room in Valvo's apartment than that he was in any other room in that entire apartment building. I therefore respectfully dissent.